# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANIS TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 05 C 576 |
| v. ) | |
| ) | Wayne R. Andersen |
| ABT ELECTRONICS, INC., ) | District Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on defendant Abt Electronics Inc.'s ("Abt") motion for summary judgment of plaintiff Janis Taylor's three count complaint, which alleges claims of hostile work environment, retaliation and constructive discharge. For the following reasons, the motion for summary judgment [119] is granted as to all of plaintiff's claims.

## BACKGROUND

From a review of both parties' pleadings and submissions, the material undisputed facts are as follows. Janis Taylor was employed with Abt from November 15, 1995 until December 21, 2001. Over the course of her employment, Ms. Taylor took offense to a number of incidents and conversations between fellow employees. Ms. Taylor informed management of her displeasure regarding the behavior of her colleagues that was often sexual in nature. Many times the behavior would cease upon Ms. Taylor's request, but she was dissatisfied with management's response.

These various incidents are summarized as follows. Ms. Taylor alleges that a female supervisor and an employee had a short relationship in 1998. She also heard from her friend that the same supervisor had kissed another former employee. Sometime in April 1999, Ms. Taylor overheard discussions of a pornographic videotape of an Abt employee that was being copied

using Abt equipment and being sold to other Abt employees. She reported this to management, and the responsible employee was suspended by the owners of Abt for ten days without pay. Ms. Taylor also complains of employees discussing their relationships at work and that these conversations sometimes referred to sexual behavior. She did not typically, however, mention these conversations to Abt management, and these individuals usually stopped the conversations when Ms. Taylor requested them to do so.

In April or May of 2001, one conversation among a group of Abt employees was particularly offensive to Ms. Taylor, and she reported it to Abt human resources. Ms. Taylor reported to the human resources department that she overheard a number of male employees discussing certain sexual acts that took place at the previous night's bachelor party. At a later date, Ms. Taylor alleges that she complained of two non-pornographic drawings, which were posted on a wall in a back room at the store. When she told an employee that she was offended by the drawings, they were taken down. On November 14 and 21, 2001, Ms. Taylor received two e-mails containing sexually suggestive jokes from a fellow supervisor. Shortly thereafter, she approached the author of those e-mails and asked her to stop. She did not receive any additional offensive e-mails. None of the above incidents were directed towards Ms. Taylor personally, and she did not observe many of them directly.

On December 10, 2001, Ms. Taylor recommended to a customer that he go to another electronics store for a part he requested for his remote control. Ricky Abt observed the incident and issued a file letter to Ms. Taylor's personnel file because she sent a customer to a competing electronics store rather than fulfill his request. On December 15, 2001, she challenged the file letter, which she had done in the past upon receiving file letters. Ricky Abt declined this request because he felt she mishandled a simple customer request. After receiving this response, Ms.

Taylor personally visited Ricky Abt and again challenged the file letter. Mr. Abt told her that his decision had been made, but Ms. Taylor returned once again that same evening with another employee whereupon she was told to leave his office and go home. He assured her she was not fired, but needed to leave immediately. Two days after this incident, Ricky Abt called Ms. Taylor and informed her that she would be demoted from her supervisor position, which would result in a $2.00 per hour pay decrease. Ms. Taylor had previously held this position at Abt prior to obtaining her supervisor role. As a result, Ms. Taylor decided to quit because she felt the conditions of work would be unacceptable and tendered her resignation to Bob Abt on December 21, 2001.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 277, 248 (1986). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion; instead, the nonmoving party must present definite, competent evidence to rebut the motion for summary judgment. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). In reaching its holding, the court will

3

consider the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  *See Anderson*, 477 U.S. at 255.

**DISCUSSION**

Janis Taylor brings her claims of hostile work environment, constructive discharge and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.  In relevant part, § 2000e-2 proscribes employment practices by which an individual is discriminated against with respect to their compensation, terms, conditions, or privileges of employment because of their sex.  42 U.S.C.A. § 2000e-2(a)(1). Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because he [or she] has opposed any practice made an unlawful employment action [by Title VII]." 42 U.S.C. § 2000e-3(a).  Plaintiff seeks relief under these statutes and we analyze the merits of her claims under the controlling case law.

**I.      Hostile Work Environment**

Janis Taylor argues that the various sexual conversations and incidents taking place at Abt during her employment created a hostile work environment inhibiting her ability to perform her job.  The Supreme Court held in *Amtrak v. Morgan* that the prohibitions of § 2000e-2(a)(1), "includes requiring people to work in a discriminatorily hostile or abusive environment." 536 U.S. 101, 116 (2002)(citing *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21 (1993)).  The Seventh Circuit has established that "only if the court concludes the conduct would adversely affect the work performance and the well-being of both a reasonable person and the particular plaintiff bringing the action may it find that the defendant has violated the plaintiff's rights under Title VII." *Gleason v. Mesirow Financial, Inc.* 118 F.3d 1134, 1143 (7th Cir. 1997).

In making such a determination, the Supreme Court has held that a court should look to the totality of circumstances presented in a given case, such as the frequency, severity, and use

of intimidation or humiliation towards the plaintiff. *Amtrak*, 536 U.S. at 116. When doing so, the court must determine whether the incidents were "mere offensive utterances" or instead, "the conduct unreasonably interferes with an employee's work performance." *Id*. The Seventh Circuit further explained that "vulgar banter, tinged with sexual innuendo" is not actionable under Title VII when it held for defendant after the plaintiff's supervisor had made numerous vulgar comments directly to plaintiff. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 348 (7th Cir. 1995). Moreover, the Seventh Circuit has established that it is very difficult to establish an actionable hostile work environment when the relevant conduct is not directed towards the plaintiff. *Gleason*, 118 F.3d at 1144. While such incidents do have relevance in demonstrating the existence of a hostile work environment, the impact of "second-hand harassment" is not as great as the impact of harassment directed at the plaintiff. *Id.*

This court finds the present case similar to those cases in which the conduct of co-workers was certainly vulgar, but did not rise to a level near the "hellish" level required of an actionable hostile work environment claim. *Baskerville*, 50 F.3d at 430. We find the present case to be similar to the Seventh Circuit's holding in *Yuknis v. First Student Inc.*, 431 F.3d 552 (7th Cir. 2007), in which it affirmed summary judgment against the plaintiff who had complained of vulgar jokes, gambling, and coworkers watching pornography at the workplace. The Seventh Circuit held that such conduct, in addition to a pair of sexually suggestive comments by a supervisor, "falls far short of the degree of harassment that creates a hostile work environment actionable under Title VII." *Yuknis*, 481 F.3d at 553. The court went on to explain that "the more remote or indirect the act claimed to create a hostile working environment, the more remote the inference that the worker's working environment was actually made unbearable." *Id.* at 555. Similarly, Ms. Taylor admits in her responses to Defendant's Statement of Facts that

5

none of the conduct cited in her complaints was directed towards her, and at no time did she feel discriminated against because she was female. Plaintiff's Answers to Defendant's Rule 56.1 Statement of Material Facts, ¶ 15-16. Furthermore, many of Ms. Taylor's complaints reference conversations she overheard around the workplace amongst subordinates or fellow supervisors. She was infrequently, if ever, a participant in these vulgar conversations and was never the subject of them.

Moreover, Ms. Taylor's work environment was less offensive than that which the Seventh Circuit held was short of the hostile work environment standard in *Baskerville*. 50 F.3d at 430. In *Baskerville*, plaintiff's immediate supervisor made several sexually suggestive comments directly towards her. *Id.* Yet, the court found that such conduct was insufficiently offensive to constitute a hostile work environment. *Id.* at 431. Here, no comments, requests, or physical contact were directed towards the Ms. Taylor. Also, she does not allege that any of her direct supervisors made any comments towards her or about her. Consequently, the conduct was objectively less offensive.

The court also takes note that the various incidents were generally sporadic. When evaluating a claim of hostile work environment, the court takes into account the frequency and pervasiveness of the offensive conduct. *Baskerville*, 50 F.3d at 431. The pornographic videotape, bachelor party conversation, and drawings took place over a six-year time period. As *Baskerville* noted, "[a] handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated barrage." 50 F.3d at 431. After examining all of the circumstances surrounding Ms. Taylor's complaints, we find that the incidents were too infrequent to create a sufficiently hostile work environment necessary to sustain a claim.

Furthermore, on some occasions, Abt management and fellow employees took corrective action when Ms. Taylor raised her objection to inappropriate conduct. For example, Ricky Abt suspended the employee for copying the pornographic videotape, and employees took down the offensive drawings. While Ms. Taylor is dissatisfied with management's response or lack thereof, these corrective actions affect the overall offensiveness of a plaintiff's work environment to the extent they reduce the unreasonable interference in an employee's work performance. *Baskerville*, 50 F.3d at 431.

Based on the foregoing analysis of controlling law and with all of the relevant facts construed in the light most favorable to Ms. Taylor, this court holds that the alleged inappropriate conduct did not rise to the necessary objective or subjective offensiveness required in a hostile work environment claim.

## II.     Constructive Discharge

Ms. Taylor argues that she was constructively discharged because she was demoted from her supervisor position and received a reduction in pay. We disagree. In order to satisfy her constructive discharge claim, Ms. Taylor must show that her working conditions were so intolerable that a reasonable person would have been compelled to resign, and those conditions must be intolerable because of unlawful discrimination. *Simpson v. Borg-Warner Auto, Inc.,* 196 F.3d 873, 877 (7th Cir. 1999). To prove a claim for constructive discharge, a plaintiff must meet an even higher standard than a hostile work environment claim. *Mcpherson v. Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004) (following the Seventh Circuit's line of cases that held working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment). Here, Ms. Taylor admits that she never felt discriminated against. Furthermore, the conduct she complains of was not unlawful. Since the work conditions were

not sufficiently hostile to satisfy the first claim, they cannot, therefore, satisfy the greater constructive discharge claim. Here, Ms. Taylor's working conditions may have been offensive, but they were neither unlawful nor subjectively discriminatory and do not meet the high standard of a hostile work environment claim. Thus, Ms. Taylor's constructive discharge claim cannot survive summary judgment.

## III.    Retaliation

Ms. Taylor argues that Abt retaliated against her because of her complaints to management. Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he [or she] has opposed any practice made an unlawful employment action [by Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie claim for retaliation, an employee can proceed under either the direct or indirect method of proof. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008). Ms. Taylor argues that her retaliation claim satisfies the requirements of both the direct method and indirect method. We will address each argument individually.

### A. Direct Method

In order for a plaintiff to establish a prima facie case of retaliation under the direct method, she must show: 1) she engaged in a statutorily protected activity; 2) she suffered an adverse action by her employer; and 3) there is a causal link between the protected expression and the adverse action. *Gleason v. Mesirow Financial, Inc.* 118 F.3d 1134, 1143 (7th Cir. 1997). If a plaintiff establishes a prima facie case of retaliation, the burden would then shift to Abt to produce a non-retaliatory justification for its actions. *Id*. Should Abt satisfy its burden, Ms. Taylor would have an opportunity to prove that Abt's proffered justification was merely

pretextual. *Id.* However, Ms. Taylor has failed to satisfy the causation element required to establish her prima facie case.

Assuming *arguendo* that Ms. Taylor can satisfy the first two prongs of the retaliation test, she must show that Abt would not have taken the adverse action, "but for" her protected expression. *Id*. Ms. Taylor could establish such a link through evidence that the discharge occurred on the heels of her protected expression. *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1459 (7th Cir. 1994). Here, however, more than one month lapsed between Ms. Taylor's most recent protected expression and her demotion. Although this extended passage of time undermines the causal connection between her complaints and demotion, it is not dispositive. *Dey,* 28 F.3d at 1458 (holding that plaintiff had made out a prima facie case of retaliation when four weeks had passed between her complaints and her discharge and events in the interim supported the inference of causation). The November complaint and subsequent demotion are not necessarily too attenuated to show a plausible nexus.

The Seventh Circuit, however, has held that temporal proximity, by itself, is not enough to establish a genuine issue of material fact. *Andonissamy*, 547 F.3d 841, 851 (7th Cir. 2008) (citing *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965 (7th Cir. 2004)). In *Andonisssamy*, the Seventh Circuit held that the plaintiff could not establish her retaliation claim under the direct method of proof because she presented "little evidence" beyond the suspicious timing of her discharge, which occurred ten days after her hostile work environment complaint. 547 F.3d at 973-4, 981. Similarly, Ms. Taylor presents little evidence to support her argument under the direct method beyond the timing of her demotion, which was much less suspicious than the timing of plaintiff's discharge in *Andonissamy*. *Id.* In November 2001, Ms. Taylor complained to Ricky Abt in a hallway that employees were having inappropriate conversations during work.

9

She was not demoted, however, until more than one month later on December 17, 2001. The evidence in the record shows that Ms. Taylor frequently made complaints to management in the past. Yet, she was never adversely affected. She also challenged a file letter in the past without incident, but during the most recent incident she repeatedly went back to challenge the letter after Mr. Abt had instructed her to leave. On the other hand, Ms. Taylor argues in support of her claim that there is no evidence of other employees being demoted from a supervisory position to a regular employee despite frequent challenges to file letters. This evidence could be probative of retaliatory intent. It is negated, however, by the fact that Ms. Taylor complained to management in the past and challenged file letters, but was not demoted until the most recent incidents occurring just days before her demotion.

Nonetheless, even if Ms. Taylor's arguments under the direct method were sufficient to establish a prima facie case of retaliation, Abt has presented a non-discriminatory justification for her demotion. Abt did not take any action against Ms. Taylor until Ricky Abt observed her mishandle a customer request and he felt she unreasonably challenged him over the file letter. The incident with the customer occurred on December 10, 2001. After repeatedly challenging the subsequent file letter, she received her demotion seven days later, on December 17, 2001. She tendered her resignation on December 21st. Similar to *Gleason*—in which plaintiff was fired weeks after she complained about management, but an intervening mistake by the employee negated the inference of causation—Ms. Taylor's demotion followed more closely to the incident with the customer and her subsequent insubordination. *Gleason*, 118 F.3d at 1147. Ms. Taylor's unsatisfactory job performance undermines the causal relation between her protected expression, which happened before such events, and her demotion.

Therefore, Abt has satisfied its burden of providing a reasonable non-retaliatory justification for Ms. Taylor's demotion, and Ms. Taylor must show that these proffered reasons are pretextual. *Gleason,* 118 F.3d at 1146. Ms. Taylor argues that Abt's justification is pretextual because it is factually baseless and insufficient to motivate her discharge. *Gordon v. United Airlines*, Inc., 246 F.3d 878, 888 (7th Cir. 2001). She claims that other employees at Abt were not demoted after challenging their file letters. However, she does not present evidence that they repeatedly challenged the file letter as she did, or that Mr. Abt similarly found their challenges unfounded. Furthermore, Ms. Taylor's multiple complaints of sexual harassment from 1995 until 2001 cut against a reasonable inference that Abt had some other motivation for her demotion. She had not previously suffered adverse employment action because of her multiple complaints of sexual harassment, and she does not present evidence to show that the November complaint was somehow distinct. She was demoted, instead, immediately following two incidents that left Ricky Abt dissatisfied with her job performance.

Abt's justification for the adverse employment action is not pre-textual merely because Ms. Taylor had previously complained of sexual harassment and others who challenged file letters were not demoted. Abt was dissatisfied with her job performance, and Ms. Taylor does not dispute the factual basis for the dissatisfaction. Ms. Taylor's assertions that her actions regarding the customer request were pursuant to company policy and that her objections to the file letter were appropriate are insufficient to raise a question of fact about an employer's assessment of inadequate performance or insubordination. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 799 (7th Cir. 1997). We therefore hold that Ms. Taylor's retaliation claim fails under the direct method of proof.

### B. Indirect Method

Ms. Taylor also argues that she can prove her retaliation claim under the indirect method of proof. We disagree. Under the indirect method of proof, a plaintiff is required to show: 1) she engaged in a statutorily protected activity; 2) she was performing her job in a satisfactory manner; 3) she was subject to an adverse employment action; and 4) she was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 559 (7th Cir. 2004). We turn to the fourth element because Ms. Taylor has not presented any evidence of similarly situated employees who were treated favorably.

The Seventh Circuit has established that similarly situated employees must be "directly comparable in all material respects." *Id.* at 561. In *Hudson*, the court held that employees were not comparable for purposes of Title VII when they held higher positions than the plaintiff. *Id.* Ms. Taylor argues that she was treated less favorably than Andrea Horn who was suspended for two weeks after copying the aforementioned videotape. Ms. Horn, however, was a full-time Electronic Parts Manager and Ms. Taylor was a part-time, night Electronic Services Manager. Notwithstanding the fact that Ms. Horn was also subject to an adverse employment action, the record indicates that these two positions were not comparable. For instance, Ms. Horn was a full-time manager, while Ms. Taylor was a part-time manager. Furthermore, Ms. Taylor admits in her Response to Defendant's Statement of Facts that she was subordinate to full-time employees. Similar to *Hudson*, the positions held by these two individuals were not comparable because one was of a higher rank than the other. *Id.*

Ms. Taylor also presents no evidence that Ms. Horn's conduct, which resulted in a suspension, was similar to hers. She was in a supervisory customer service position and

mishandled a customer request whereupon she received a file letter. She was then demoted after repeatedly challenging Mr. Abt's decision on the letter. On the other hand, Ms. Horn's actions, while reprehensible, were not directly related to her employment responsibilities and there is no evidence that she disputed her disciplinary action. Therefore, leaving aside the issue of whether Ms. Horn was in fact treated favorably, Ms. Taylor has not established that they were comparable in all material respects. *Id.* at 561. Consequently, Ms. Taylor has not satisfied a necessary element of her retaliation claim under the indirect method of proof.

## CONCLUSION

For all of the reasons stated in the court's Memorandum Opinion and Order, defendant Abt Electronics' motion for summary judgment [119 ] is granted as to all of plaintiff's claims. This is a final and appealable order.

_____
Wayne R. Andersen
United States District Judge

Dated: _January 15, 2010_____